TRANSPORT INDEMNITY COMPANY,
Plaintiff-Appellant,

v.

PAXTON NATIONAL INSURANCE
COMPANY, Defendant-Appellee.

No. 81–4120
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Aug. 31, 1981.

Rehearing Denied Oct. 5, 1981.

Fred M. Bush, Jr., Thomas D. Murry, Tupelo, Miss., for plaintiff-appellant.

Cary E. Bufkin, Jackson, Miss., for defendant-appellee.

Before CHARLES CLARK, RUBIN and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

Transport Indemnity Company (Transport) sought a declaratory judgment against Paxton National Insurance Company (Paxton) to determine liability for an accident occurring in Tupelo, Mississippi on October 24, 1978. The district court found that Transport was solely and exclusively liable. For the reasons set forth below, we reverse.

On October 24, 1978, Edwin D. Watts, d/b/a Watts Trucking Company of Duncannon, Pennsylvania, agreed to lease his tractor trailer rig and driver to Chem Haulers, Inc., of Florence, Alabama, for a shipment to Syracuse, New York. Watts' driver, John Weibley, presented himself and the truck to an agent of Chem Haulers, signed a trip lease, and departed after placing two placards with Chem Haulers' name and ICC number on each door of the tractor. The truck was involved in a collision with a vehicle driven by James Nichols, who suffered personal injuries and property damage as a result of the accident. At the time of the accident Chem Haulers was the named insured under a policy issued by Transport and Watts was the named insured under a policy issued by Paxton.

I.

■ The district court thought that Transport contended that the omnibus clause in Paxton's policy covered Chem Haulers as a permissive user. On that basis the court held that endorsement A 330 [1] of Paxton's policy excluded omnibus coverage of Chem Haulers.[2] The district court's premise was incorrect. Transport never contended that Chem Haulers was a permissive user under Paxton's policy but rather, it insisted to the district court and here that Watts' driver Weibley was the permissive user. Since the exclusion of liability under endorsement A-330 excepts "the named insured *or an employee thereof*" it does not affect Weibley. The failure by the district court to recognize that Weibley was an insured under the terms of the Paxton policy was error.

■ The district court also noted that Paxton's policy provided an exclusion for liability assumed by the insured under any contract or agreement. The trip lease signed by Weibley contained a clause whereby the lessor (Watts) agreed to indemnify the lessee (Chem Haulers) from

---

1. Endorsement A-330 in Paxton's policy, also known as the "Truckmen's Endorsement" provided:

    (b) Except with respect to the named insured or an employee thereof, but subject otherwise to the "Persons Insured" provision, the insurance does not cover as an insured any person or organization, or any agent or employee thereof, engaged in the business of transporting property by automobile for the named insured or

for others under any of the following conditions:

(1) if the bodily injury or property damage occurs while such automobile is not being used exclusively in the business of the named insured and over a route the named insured is authorized to serve by federal or public authority.

2. The parties stipulated that the truck was not being used over a route that Watts was authorized to serve.

any and all liability incurred by the use of the leased vehicle. The district court reasoned that Paxton had no liability for what the court thought was a contractual undertaking of its insured's employee. However, the district court's failure to recognize Weibley's status as a Paxton insured caused further error in defining "liability assumed by contract." The liability of Paxton for Weibley's negligence was grounded in the insurance contract between Paxton and Watts. The indemnity clause in the trip lease was immaterial to the coverage provided. The contract exclusion in Paxton's policy did not apply to the accident in question.

## II.

Deciding that Paxton is liable under its policy for the accident in question does not determine whether Transport was liable as well, and if so, the order of liability among insurers. The district court found that "under 49 C.F.R. 1057,[3] Chem Haulers became exclusively and solely liable for the vehicle as fully and effectively as if it owned the vehicle and the driver and this becomes Transport's exclusive liability under form BMC 90.[4]" This court rejected that rule in *Carolina Casualty Insurance Co. v. Underwriter's Insurance Co.*, 569 F.2d 304, 312 (5th Cir. 1978).

Throughout this litigation Transport has conceded liability. Its contention is that its liability is excess and that Paxton's liability is primary. *Carolina Casualty, supra*, is dispositive on this point. There, as here, the driver of the leased truck was a paid employee of the lessor whose insurance company insured the risk that a permissive user might incur liability. The court stated that "Carolina [lessor's insurer] cannot disavow its primary insurer status on the theory that public policy demands that this be pushed off onto Underwriters [lessee's insurer]. ICC policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection". 569 F.2d at 313. As to the lessee's responsibility, we found pursuant to the ICC regulations that the driver was under the lessee's control and thus was a permissive user within the lessee's contract of insurance as well. Applying Georgia law, the court found both insurers primarily liable. 569 F.2d at 313–15.

Transport would distinguish *Carolina*, on the basis that the lessee's insurance contract in *Carolina* contained an omnibus (permissive user) clause whereas no such clause exists in the present case. According to Transport, the contractual omnibus clause in *Carolina* provided the only basis for primary liability on the lessee's part. The district court made no specific finding on this issue. Under its ICC endorsement Transport contracted to insure Chem Haulers for any negligence of a driver operating a vehicle under Chem Haulers' Certificate of Authority. Further, the Transport policy provides coverage "to any person who would not otherwise be covered under the underlying policy except by virtue of the

---

**3.** 49 C.F.R. § 1057.12(d) (1980) provides:
    Written Lease Requirements.
    (d) Exclusive possession and responsibilities—
        (1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
    This regulation was promulgated pursuant to Section 215 of the Interstate Commerce Act, 49 U.S.C. § 315 (1976), recodified at 49 U.S.C. § 10927, which states: ". . . To protect the public, the Commission may require any such motor carrier to file the type of security that a motor carrier is required to file under paragraph (1) of this subsection." Paragraph (1) specifies an insurance policy as a type of security.

**4.** Form BMC 90 is an endorsement to Transport's policy assuring compliance with the above quoted provisions of the Interstate Commerce Act. By virtue of this endorsement Transport agreed to pay for injuries arising from negligence in the operation of motor vehicles under Chem Haulers' certificate of public convenience and necessity.

application of the provisions of a motor vehicle financial responsibility law or other similar law." Transport argues that absent an omnibus clause it can only be vicariously liable, and therefore has a right of indemnity against Weibley, who in turn may proceed against Watts and ultimately against Paxton. On this premise, Transport urges that holding its coverage to be excess avoids circuity of action. Our finding that Weibley is an insured under Transport's contract collapses this theory, as an insurer may not be subrogated against its insured. *Carolina*, 569 F.2d at 314. Transport's attempt to distinguish *Carolina* is unpersuasive.

### III.

We next turn to Mississippi law in order to determine which of the companies, or both, are primarily liable. *Cf. Carolina*, 569 F.2d at 315 (applying Georgia law).[5] Here, we are not faced with "two insurers attempting to limit their liability to excess coverage if there is other insurance." *Cf. Carolina*, 569 at 315. If such were the case we might "suffer the considerable travail" *Travelers Indemnity Co. v. Chappell*, 246 So.2d 498, 502 (Miss.1971) of equitably giving effect to the exclusions in both policies. These contracts may be easily construed and enforced according to the terms employed. 246 So.2d at 510. Paxton's policy declares: "The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance."

Transport's policy states: "If at the time of an occurrence to which this insurance applies there is any other valid and collectible insurance ... the insurance provided by this policy with respect to that occurrence shall be excess of any other such insurance ...." Paxton's policy contains no such excess or contingent clause as it pertains to basic personal and property damage insurance. Thus, Paxton's liability is primary, Transport's is excess.

This result is reached without resort to the trip lease containing the indemnity clause signed by Weibley. Therefore, it is unnecessary to inquire into the law of agency. This result harmonizes with the general rule that liability insurance provided by the vehicle owner affords primary coverage. *Travelers Indemnity*, 246 So.2d at 505, 509.

Paxton argues that under *Simmons v. King*, 478 F.2d 857 (5th Cir. 1973), a vehicle lessor's potential liability is to be determined under state common law, and that under *Mitchell v. Eagle Motor Lines*, 87 So.2d 466 (Miss.1956) the lessee is solely liable as a matter of law for the driver's negligence. This argument has some appeal, particularly since the lease in *Mitchell* stated explicitly that the driver was the lessor's servant. However a close reading of *Mitchell* reveals that the Mississippi Supreme Court found as a matter of fact that the driver was an operator of the lessee, 87 So.2d at 467, so that the lessor had provided nothing more than the vehicle itself. 87 So.2d at 470. In contrast, there is no disputing the fact that Weibley was Watt's driver, and that Watts furnished Chem Haulers a truck *and a driver*. While it is true that Weibley was also a statutory employee of Chem Haulers under 49 C.F.R. 1057, *Simmons v. King, supra*, Paxton's repeated argument that Weibley was the employee of Chem Haulers *alone*, and that he operated without Watts' permission blinks reality.

### REVERSED AND REMANDED.

---

**5.** Neither party raised or briefed the issue of whose law governs. We assume Mississippi law should apply. *See N. K. Parrish, Inc. v.* *Southwest Beef, Etc.*, 638 F.2d 1366, 1370 n.3 (5th Cir. 1981).